ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Podrez Enterprise, LLC | )  ASBCA No. 61971 |
| | ) |
| Under Contract No. W911S2-18-P-1546 | ) |

APPEARANCE FOR THE APPELLANT: Ms. Tara J. Powell
Executive Administrator

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Wayne T. Branom III, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD

This is an appeal from a contracting officer's final decision terminating the captioned contract for cause. Appellant has elected Rule 12.2, Expedited Procedure, and the parties have elected to submit the appeal on the record without a hearing, pursuant to Board Rule 11. A decision under Board Rule 12.2 shall have no value as precedent, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside. The government filed a Rule 11 brief and no further briefing was made by either party. In addition to the government's Rule 11 brief, the record consists of the government's Rule 4 file as supplemented and the pleadings, including documents attached to appellant's complaint. For the reasons stated below, the appeal is denied.

## SUMMARY FINDINGS OF FACT

1. In early August 2018, Request for Quotations (RFQ) No. HOODLRCFR0031 was issued by Fort Hood for 220 Railcar Spanners described as follows:

> Part # RS 20 24 084 18 STUB Q8372, Rail Spanner with
> 2" high Stub Toe 24" wide / 84" long / 4" thick Rated:
> 20,000lbs per single spanner (40,000lbs per pair) Improved
> "kicker plate" utilizing tubes instead of angles Stub Toe
> increases lifespan Items must meet the requirements listed
> above no variations will be accepted!

(Compl., attach. A) Moreover, the RFQ provided that any award would be subject to certain commercial item terms and conditions, including, among others, FAR 52.211-6,

BRAND NAME OR EQUAL and FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS. (*Id.*)

2. On or about August 22, 2018 appellant, Podrez Enterprise, LLC (Podrez or appellant) responded to the RFQ, specifically referencing that the procurement was brand name or equal, and that no variations were acceptable (R4, tab 2 at 1, 3). The quote was for a quantity of 220 at $566.50 each for a total quote of $124,630.00 (*id.* at 2).

3. The quote further iterated the description of the product upon which it was quoting, as follows:

> Seller Line Item Details:
> Manufacturer: Podrez Enterprise
> Part Number: CSTMRS
> Description: Spanner – MANUFACTURED FROM
> HIGH-STRENGTH, LIGHTWEIGHT ALUMINUM –
> Non-skid 2" wide traction cleat self-cleaning surface with
> 5 serrated teeth – Extra large beam spacing for heavy chain
> and tie-downs – 2" HIGH STUB TOE – 24" W x 84" L x
> 4" thick – RATED 20,000 LBS PER SPANNER/40,000
> LBS PER PAIR – KICKER PLATE UTILIZES TUBES
> INSTEAD OF ANGLE – STUB TOE INCREASES
> LIFESPAN 100% MADE IN USA SMALL BUSINEES
> THE BERRY AMENDMENT ACT COMPLAINT [sic]
> BUY AMERICAN ACT COMPLIANT SHIPPING = FOB
> DESTINATION CONUS –

Said description was substantially similar to the language contained in the RFQ (R4, tab 2 at 3).

4. On August 24, 2018, the government awarded to Podrez Contract No. W911S2-18-P-1546 (R4, tab 6 at 1). The contract incorporated by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (JAN 2017) which stated in pertinent part:

> (m) *Termination for cause.* The Government may
> terminate this contract, or any part hereof, for cause in the
> event of any default by the Contractor, or if the Contractor
> fails to comply with any contract terms and conditions, or
> fails to provide the Government, upon request, with
> adequate assurances of future performance. In the event of
> termination for cause, the Government shall not be liable
> to the Contractor for any amount for supplies or services

2

not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(R4, tab 6 at 4) The description of the items in the contract was the same as the specifications returned with appellant's quote (R4, tab 6 at 3). The contract required appellant to deliver the rail spanners to Fort Hood, TX by September 24, 2018 (R4, tab 6 at 3-4).

5. Appellant failed to meet the September 24, 2018 due date and on October 22, 2018, the contracting officer (CO) threatened to terminate the contract for cause due to non-delivery (R4, tab 7 at 4). Thereafter the CO granted appellant's request to extend the due date to December 3, 2018 (R4, tab 8 at 1).

6. The 220 rail spanners were delivered to Fort Hood in two partial shipments on December 3 (165 units) and 6 (55 units), 2018 (R4, tab 23 at 4). David Slaughter, Plans and Operations Chief of the Logistics Readiness Center at Fort Hood, and a prior maintenance technician and manager of technicians, stated in a sworn declaration:

> 3. [In early December 2018] we examined the first pallet load of spanners....Our initial impression was of disappointment, due to the apparent poor quality of workmanship. Welds were not smooth and pure and the thickness of bracing materials seemed shy of specifications. Our Quality Control team and certified welders were called...to make a preliminary assessment.
>
> 4. While waiting for the maintenance personnel, we removed one spanner from the pallet and placed it on the ground: I stepped on the middle if the spanner and moved up and down without jumping and the spanner flexed significantly, convincing all of us, that if it flexed that much with 200 pounds, it would not support 2,000 pounds.
>
> 5. [The maintenance personnel] confirmed the poor welding craftsmanship and further pointed out the many areas of inferior welding.

(R4, tab 57, Slaughter decl. ¶¶ 3-5)

3

7. Rex Wheeler, a maintenance supervisor at Fort Hood, set forth in a sworn declaration his significant experience in the field and was tasked, along with his senior welder, to complete an inspection of the spanners on December 4, 2018. They submitted a report on December 6, 2018, which concluded that the spanners did not meet the contract specifications. More specifically, they found:

> a. There were several instances where the measurements did not meet the specifications required.
>
> b. Some of the metal products used did not meet the specifications. For example square tubing should have been used for the main support beams and kicker plate. However, the vendor fabricated the main support beams from flat sheet folded into channel and then welded flat sheet to box the channel in. The kicker plate was fabricated from aluminum angle instead of square tubing. These two instances of noncompliance dramatically affect the structural integrity of the spanner and affect the spanners' ability to safely support the load requested.
>
> c. During the inspection it was noted that there were several instances where the welding work was not in compliance with current industry standards. The welding used in the assembly process was not standardized on each spanner. Some did not have enough welding applied to make the product structurally sound. There were welds that lacked penetration which affects structural integrity. There were welds that had too much penetration that caused holes to be burnt into the structure or caused a thinning of material, both of which can affect the structural integrity of the spanner.
>
> d. Overall the spanners did not meet the specifications outlined and therefore were deemed unsafe to use. Because of the concern for safety we did not attempt to put the spanners under any load.

(R4, tab 58, Wheeler decl. ¶¶ 3.a-d)

8. The Army completed an inspection report consisting of numerous detailed photographs with a key to demonstrate how the items delivered did not conform to the specifications and drawings in the contract (R4, tab 10; *see also* gov't br. proposed finding of fact 16).

4

9. On December 17, 2018, the government rejected the shipment of spanners for the reasons set forth as follows:

> The 220 rail spanners did not meet the dimensions called for [in] the solicitation; the spanners were only 23 9/16 inches wide but the solicitation called for 24 inches. The aluminum tubing was not 4 inche[s] high but only 3 1/2 inches high. The material was not properly assembled in accordance with the solicitation, welds were poorly struck, incomplete welds, and missing welds were prevalent throughout all spanners.

(R4, tab 11 at 2) The full inspection report including photographs and keys were provided to Podrez on December 19, 2018 (R4, tab 12 at 2). We find that the items were not in conformance with the contract specifications.

10. On January 7, 2019, the CO issued a show cause to appellant why the contract should not be terminated for cause due to appellant's failure to deliver spanners that conformed to the contract. Podrez was given 10 days to explain why its failure to deliver was without fault, or else the contract would be terminated for cause. (R4, tab 27 at 1)

11. Appellant responded to the show cause on January 10, 2019 claiming it was unaware of a drawing upon which the rejection of the goods was based in part, when in fact appellant had referred to said drawing in its own quote responding to the RFQ (R4, tab 33 at 5).

12. Nevertheless, on January 15, 2019, the CO attempted to rectify the situation by allowing appellant to retrieve the nonconforming items and bring them into conformance, granting an additional 30 days from retrieval to effect conformance (R4, tab 37 at 1; tab 59, Brown decl. ¶ 7).

13. By February 4, 2019, the items had not been picked up from Fort Hood and the CO gave appellant until 1400 on February 7, 2019 to provide a timeline for retrieval or else the contract would be terminated for cause (R4, tab 41 at 1). Rather than provide said timeline, appellant advised that if the contract were terminated they would "dispute it and have it reversed and then file a claim for TERMINATION FOR CONVENIENCE" (R4, tab 42 at 1).

14. Thereafter the CO, on February 8, 2019, issued a final decision terminating the contract for cause and on February 11, 2019 modified the contract accordingly (R4, tabs 43-45, 47).

15. Appellant timely appealed the termination for cause to the Board which we docketed as ASBCA No. 61971. Only the termination for cause is at issue here.

DECISION

A termination for default is a drastic sanction which should be imposed (or sustained) only for good grounds and on solid evidence. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987) (quoting *J.D. Hedin Constr. Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969)). Though this is an appeal brought by Podrez, because a termination for default is essentially a government claim, the government bears the initial burden of proving "by a preponderance of the evidence that a termination for default was justified." *Keystone Capital Services*, ASBCA No. 56565, 09-1 BCA ¶ 34,130 at 168,753 (citing *Lisbon Contractors*, 828 F.2d at 765). "If the government establishes a prima facie case justifying the termination, the burden shifts to the contractor to prove the default was excusable." *Truckla Services, Inc.*, ASBCA Nos. 57564, 57752, 17-1 BCA ¶ 36,638 at 178,445 (citing *ADT Constr. Grp., Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,312).

Based upon the evidence of record we find that the spanners did not comply with the contract, that appellant failed to take corrective action when given the opportunity to do so and that it has provided no reason for its failure to perform in accordance with the contract (findings 9, 13). Appellant has presented no evidence that the spanners were in compliance with the contract.

Appellant filed a document entitled "Affirmative Statement of Disputed Facts" on April 8, 2019. This document does not include any additional evidence in support of its case. It merely makes conclusory statements about the government's case and states that it disputes said statements and wants documents in support of them. Those documents in support of the government's decision to terminate for cause are in the Rule 4 file submitted by the government and clearly support the termination action. The "Conclusion" of the appellant's affirmative statement is quoted in full as follows because that is the most cogent argument it makes in this record:

> The goods delivered by appellant conformed to the specifications of the contract. No intended use was provided by the Government. Appellant did not agree to the corrective action plan offered by the Government and believes the actions to be an abuse of discretion. The appellant advised the Government that the specifications provided by the government were defective, improper, and invalid. The appellant completed the contract under the terms of the contract. Appellant believed the actions taken

6

by the Government were coercive; the Government refused to consider any corrective action plans proposed by appellant. Appellant believes the actions taken by the contracting officer violated the Government's implied duty of good faith and fair dealing, as a result, terminated the contact improperly.

Unfortunately for appellant, there is no evidence in this record to support those conclusions. Accordingly the termination for cause was proper and fully supported by the record.

### CONCLUSION

The appeal is denied.

Dated: July 2, 2019

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61971, Appeal of Podrez Enterprise, LLC, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals